

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# Ali v. Terhune

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1308

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ali v. Terhune" (2004). *2004 Decisions*. Paper 296.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/296

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-1308

_____

AMIR ABDUL-KARIM ALI,

Appellant

v.


JACK TERHUNE, Commissioner,
New Jersey Department of Corrections,
Individually and in his official capacity;
JAMES F. BARBO,
Superintendent of Northern State Prison,
Individually and in his official capacity;
STEVEN PINCHAK,
Superintendent of East Jersey State Prison,
Individually and in his official capacity;
TREVOR PARKS, Senior CMS Physician,
Northern State Prison and East Jersey State Prison,
Individually and in his official capacity;
ROBERT DALSEY, Orthopedics, Cooper Medical Center,
Individually and in his official capacity;
JESSIE ROJAS, Assistant Ombudsman,
Northern State Prison,
Individually and in her official capacity;
MARY KEATING-DISABATO, Senior Parole Administrator,
New Jersey State Parole Board,
Individually and in her official capacity;
ANDREW CONSOVOY, Senior Parole Administrator,
New Jersey State Parole Board,
Individually and in his official capacity;
BARBARA P. MCCALL, Registered Nurse,
Northern State Prison,
Individually and in her official capacity;

MICHELLE R. RICCI, Assistant Administrator,
Northern State Prison,
Individually and in her official capacity;
SCO GREGORY, Hospital Officer (2nd shift)
Northern State Prison,
Individually and in his official capacity;
BARRY HAWLK, CMS Administrator,
Northern State Prison,
Individually and in his official capacity;
RICHARD,
Individually and in his official capacity;
KAREN VANSELOUS, Senior Classification Officer,
Northern State Prison,
Individually and in her official capacity

---

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 99-cv-03733
District Judge: The Honorable John W. Bissell

---

Submitted Pursuant to LAR 34.1
September 30, 2004

---

Before: RENDELL, FUENTES and SMITH, *Circuit Judges*

(Filed: September 30, 2004)

---

OPINION OF THE COURT

---

SMITH, *Circuit Judge*.

Amir Abdul-Karim Ali filed a § 1983 claim against numerous individuals alleging

that they were deliberately indifferent during his incarceration to the serious medical

needs presented by his shoulder impairment. The District Court dismissed Ali's claim against Dr. Dalsey, a consulting physician, and subsequently granted summary judgment for the remaining individuals, concluding that Ali had failed to establish deliberate indifference. Ali asserts that the District Court erred. We disagree and will affirm the District Court.

## I.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. Appellate jurisdiction exists under 28 U.S.C. § 1291. We exercise plenary review over an order granting a motion to dismiss. *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004). We also "exercise plenary review over the District Court's grant of summary judgment . . . and we apply the same standard that the District Court should have applied." *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001).

## II.

Ali was initially diagnosed with chondrosarcoma in his right shoulder while in the Navy in 1981. Surgical resection with an allograft was performed at a naval hospital upon his return to the United States. In 1987, Ali was convicted and incarcerated in New Jersey's Northern State Prison. In February 1994, Dr. Dalsey, an orthopedic surgeon, evaluated the status of Ali's shoulder and discussed with him two surgical treatment options. Ali chose to defer treatment. In December 1995, Ali returned to Dr. Dalsey, who again recommended reconstructive surgery of the right shoulder joint.

Approximately six months later, in June 1996, a memorandum prepared by Dr. Saclolo to prison administrator James Barbo indicated that Dr. Saclolo had spoken with Dr. Dalsey by telephone and that Dr. Dalsey had suggested that a second opinion be obtained from an orthopedist.

In October 1996, Dr. Parks, a medical director with Correctional Medical Services which provided medical care to New Jersey's correctional facilities, was transferred to the northern part of New Jersey. In his new position, Dr. Parks was responsible for overseeing Northern State Prison's medical care and for providing direct patient care. He reviewed Ali's medical records in November 1996 and requested an orthopedic consult. In January 1997, Dr. DiBiase with the Trenton Orthopedic Group evaluated Ali and recommended that Ali should be seen by Dr. Dalsey. Consistent with this recommendation, Dr. Parks referred Ali back to Dr. Dalsey. The next month, Ali was mistakenly referred back to Dr. DeBiase, who reiterated that Dr. Dalsey should be consulted.

In November 1997, an x-ray of Ali's right shoulder "demonstrate[d] no change compared to a prior examination" from November 1992. On November 13, Ali was evaluated by Dr. Ahmed, who recommended referral "to [a] cancer specialist" on a yearly basis, or more frequently if pain was constant. A CAT scan of Ali's right shoulder in February 1998 revealed that there was "[n]o definite evidence of fracture or destructive pathology." After consulting Dr. Cornfield, an oncologist, and considering the results of

4

the CAT scan, which were negative for "any new bony pathology that would support reoccurrence of the sarcoma," Dr. Parks decided to refer Ali back to Dr. Dalsey, noting that Ali's current "problem [was] most likely mechanical."

Dr. Dalsey evaluated Ali's status again on May 1, 1998, recommended resection arthroplasty and hardware removal, and discussed an alternative humeral head replacement procedure. Ali was undecided and wanted to "give this further thought." Dr. Dalsey planned to "check on [Ali] in six months' time."

Three days later, Dr. Parks acknowledged Dr. Dalsey's consult and documented the "need" to schedule surgery. Ali was concerned about the surgery and expressed his belief to a nurse that the procedure "might not be appropriate." Subsequently, Ali asked for a second opinion. During a visit with Dr. Parks on July 2, Ali indicated that he was "not comfortable with Dr. Dalsey" because he had received conflicting opinions as to the recommended surgery. Ali repeated his request for a second opinion, and stated that he would "not undergo surgery with Dr. Dalsey."

Consistent with Ali's request, in December 1998 Dr. Parks referred Ali to the University of Medicine and Dentistry of New Jersey (UMDNJ). The following month, in January 1999, a chart check failed to confirm whether the consultation at UMDNJ was in fact ordered. Although the consultation was rescheduled, it was erroneously made with Saint Francis Medical Center. A rescheduled consultation at UMDNJ occurred on July 1, 1999, with Dr. Benevenia. He documented that Ali had a "failed allograft," ordered

5

additional diagnostic testing, and directed that Ali return in September 1999 for further evaluation. During a return visit in November, Dr. Benevenia ordered additional bloodwork to rule out an infection and noted the possibility that reconstructive surgery might be performed. In January 2000, Dr. Benevenia recommended that Ali consult him for reconstructive surgery after his release from prison. Although Ali has been released from prison, he has yet to undergo reconstructive surgery.

Ali subsequently filed this civil rights action against Dr. Dalsey and numerous individuals employed by or affiliated with the Department of Corrections, claiming that they failed to provide the necessary medical attention and treatment to his shoulder impairment while he was incarcerated from July 1, 1987 through March 13, 2000. Ali alleged that the "medical staff constantly scheduled [him] to see doctors that they knew could not treat him. The medical staff also chose simply to administer generic pain relievers, rather than send Mr. Ali for a surgical procedure to deal with the cancerous and progressively degenerative condition that they observed in [his] shoulder."

Dr. Dalsey filed a motion to dismiss in early 2000, which the District Court granted. Summary judgment motions were filed by the remaining administrative and medical defendants. The District Court granted both motions. Ali appealed with respect to only Dr. Parks, Nurse Barbara McCall, Administrator Barry Hawlk,[1] Dr. Dalsey, Jack

---

[1] Ali's "Concise Summary of the Case" filed with this Court designates Hawlk, together with Dr. Parks and Nurse McCall as the "Medical Defendants" and contends that they "failed to provide Ali with realistic choices for the care of his shoulder." Ali's brief, however, did not address Hawlk's alleged liability. His claim against Hawlk is therefore

Terhune, Commissioner of New Jersey's Department of Corrections, James Barbo, the superintendent at Northern State Prison, and Steven Pinchak, the superintendent of East Jersey State Prison.

III.

In *Estelle v. Gamble*, the Supreme Court recognized that the government has an "obligation to provide medical care for those whom it is punishing by incarceration" and declared that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." 429 U.S. 97, 103, 104 (1977) (citations and internal quotation marks omitted). The Court acknowledged that deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (reiterating that deliberate indifference may be demonstrated by denying, delaying or preventing a prisoner from receiving needed or recommended medical treatment). *Estelle* instructed, however, that negligence does not violate the Eighth Amendment. *Id.* at 106. Thus, matters relating to the exercise of professional judgment that may constitute medical malpractice are not violative of the Eighth Amendment proscription. *Id.* at 107; *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (reiterating *Estelle*'s distinction between

waived and need not be addressed further. *See Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 316 n.11 (3d Cir. 1999); *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

deliberate indifference to serious medical needs and "mere negligence"); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (acknowledging that a deliberate indifference claim requires that a prisoner demonstrate "more than negligence").

In *Farmer v. Brennan*, the Supreme Court explained that the term "deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." 511 U.S. at 836. The Court instructed that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837. Thus, there is both an objective and a subjective component to a deliberate indifference claim. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). Here, we are concerned with the objective component of whether Ali was deprived of the necessary medical care.

IV.

Ali contends that the District Court erred in granting summary judgment for Dr. Parks because the medical records demonstrated that he waited for several years for a second opinion on alternative shoulder surgeries. This delay, according to Ali, was sufficient for his case to survive summary judgment.

Our review of the medical records establishes that Dr. Parks reviewed Ali's status shortly after being assigned to the Northern State Prison, made arrangements for an

orthopedic consultation and regularly approved the requests for medical care made by other practitioners. After consideration of additional diagnostic tests, he and a consulting oncologist concluded that Ali's condition did not present any new bony pathology or a reoccurrence of chondrosarcoma. As a result, Dr. Parks determined that Ali's condition was "most likely mechanical" and, consistent with Dr. Debiase's recommendation, referred Ali back to Dr. Dalsey in May 1998. Although Dr. Parks was willing to schedule Ali for surgery, Ali balked. Despite Ali's decision not to proceed, Dr. Parks approved a request for a second opinion and followed the recommendations of Dr. Benevenia. We agree with the District Court's conclusion that this evidence does not establish that Dr. Parks was deliberately indifferent to Ali's medical needs.

We acknowledge that in *Durmer v. O'Carroll*, 991 F.2d at 68, this Court concluded that an inmate had a viable deliberate indifference claim against the prison physician where the inmate, who had suffered a stroke, had been denied physical therapy during the 18 month period that followed while he was referred from one consultant to another. *Durmer*, however, is not controlling with respect to Ali's claim against Dr. Parks, for two reasons. Unlike the physical therapy in *Durmer*, the surgical procedure at issue here, to be effective, did not have to be performed within a specific window of time. The notes of Dr. Dalsey and Dr. Benevenia confirm that there was no urgency. Dr. Dalsey recommended follow-up in six months and Dr. Benevenia recommended that surgery be delayed until Ali was released from prison. Thus, the delay resulting from

9

consulting other physicians was not tantamount to a denial of medical care. Second, the delay was not occasioned by Dr. Parks inasmuch as he was ready to schedule Ali's surgery in May 1998. Instead, Ali chose to defer treatment.

We also recognize that Ali's medical expert, Dr. Smith, opined that Ali's condition required follow-up "every one to two months." That opinion, however, contrasts sharply with that of Dr. Dalsey who documented that he did not need to see Ali for another six months. As *Estelle* and its progeny make clear, disagreement in a matter of professional judgment, such as the frequency of follow-up visits, does not support a claim of deliberate indifference.

V.

Ali's amended complaint averred that Nurse McCall "habitually failed to ensure orders were made for Mr. Ali's required and prescribed medication." Ali pointed the District Court to two specific instances when he did not receive the medication he claims he needed as evidence of Nurse McCall's deliberate indifference. The District Court granted summary judgment for Nurse McCall, pointing out that she was not involved in either incident. Ali contends the District Court erred, but relies on the same two instances as evidence that McCall was deliberately indifferent to his need for medication.

We have reviewed the record carefully and Ali has failed to come forward with admissible evidence of any involvement of Nurse McCall in either instance, instead offering inadmissible hearsay. As *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

10

1988), makes clear, a "defendant in a civil rights action must have personal involvement in the alleged wrongs."  Accordingly, in the absence of McCall's personal involvement, we conclude that the District Court appropriately granted summary judgment in her favor.

VI.

Ali's amended complaint alleged that Dr. Dalsey "was a Physician at Cooper Medical Center" and that he "was unable to and/or refused to provide proper medical treatment to Mr. Ali during his visits."  The District Court granted Dr. Dalsey's motion to dismiss Ali's claim, but failed to state its rationale.

Ali now surmises that the District Court dismissed Dr. Dalsey on the basis that he was not a state actor and argues that the Court erred by dismissing his claim.  In Ali's view, the District Court should have allowed Dr. Dalsey's relationship with the state to be developed during discovery.  Dr. Dalsey argues that he was not a state actor, but the record before us is insufficient to allow us to resolve this issue.

Nevertheless, an "appellate court may affirm a result reached by the District Court on different reasons, as long as the record supports the judgment." *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1145 n.1 (3d Cir. 1983); *see also Helvering v. Gowran*, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."). Here, the evidence demonstrates that, even if

11

Dr. Dalsey was a state actor, he was not deliberately indifferent to Ali's medical needs. On at least three occasions Dr. Dalsey recommended surgical intervention and each time Ali chose to defer such treatment. Accordingly, Ali cannot establish that Dr. Dalsey denied, delayed or interfered with Ali's medical treatment.

VII.

Ali also pursued claims against Terhune, Barbo and Pinchak ("State Defendants"), alleging that they were personally liable because they failed to respond to Ali's requests for assistance in obtaining medical attention. The District Court concluded that *Durmer*, 991 F.2d at 69, was controlling and rejected Ali's argument. We agree. There, we concluded that the prison warden and the State Commissioner for Corrections were not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Id.* As we recently explained in *Spruill v. Gillis*, 372 F.3d at 236, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236 (discussing *Durmer*, 991 F.2d at 69). We concluded that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236. Here, the record is devoid of any evidence to suggest that these administrators had a reason to believe that

12

the prison doctors were either mistreating or not treating Ali. Indeed, as we have concluded, Dr. Parks was attending to Ali's medical needs.

For the reasons set forth above, we will affirm the District Court's order and judgments.